ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMERICAN RENOVATION AND CONSTRUCTION COMPANY<br><br>46 Berner St.<br>Mammoth Lakes, CA 93546<br><br>and<br><br>ST. PAUL MERCURY INSURANCE COMPANY<br><br>385 Washington Street<br>St. Paul, MN 55102<br>and<br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY<br><br>385 Washington Street<br>St. Paul, MN 55102<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | FILED<br>NOV 30 2006<br>U.S. COURT OF FEDERAL CLAIMS<br><br>06-813 C<br><br>Case No. ______________ |

COMPLAINT

COME NOW, Plaintiffs, American Renovation and Construction Company ("ARC") and St. Paul Mercury Insurance Company and St. Paul Fire and Marine Insurance Company (hereinafter collectively referred to as "St. Paul Travelers") by counsel, and for their Complaint against the United States of America, and for their

appeal of the Contracting Officer's Final Decision dated December 1, 2005, for Contract Nos. F41622-97-C-0022 and F41622-97-C-0011 ("Final Decision") allege as follows:

## APPEAL

1. This Complaint constitutes ARC's and St. Paul Travelers'[1] Appeal of the above referenced Contracting Officer's Final Decision. ARC and St. Paul Travelers hereby appeal each and every conclusion of law and finding of fact contained therein, express, implied and/or otherwise inferred.

## THE PARTIES

2. ARC is a California corporation that is generally engaged in the business of construction contracting throughout the United States of America.

3. St. Paul Fire and Marine Insurance Company and St. Paul Mercury Insurance Company (collectively "St. Paul Travelers") are both Minnesota corporations that are generally engaged in the business of providing surety bonds throughout the United States of America.

4. The Defendant is the United States of America (the "Government").

## JURISDICTION

5. This Court has jurisdiction over the subject matter of this action pursuant to the Tucker Act, 28 U.S.C. § 1491 and the Contract Disputes Act 41 U.S.C. § 601, et seq.

---

[1] The Final Decision does not apply to St. Paul Mercury Insurance Company or St. Paul Fire and Marine Insurance Company, the bonding companies for the M-2 and M-3 Contracts. However, because the Government improperly demanded payment from St. Paul Travelers as the Surety for ARC in the Final Decision, in the event that ARC could not pay, we have included St. Paul Fire and Marine Insurance Company and St. Paul Mercury Insurance Company in the Complaint as the actual sureties on the M-2 and M-3 Contracts, respectively.

6. This Complaint constitutes a timely appeal from the Government's Final Decision, dated December 1, 2005, which was received by the letter addressee, Watt, Tieder, Hoffar & Fitzgerald, LLP on December 12, 2005, pursuant to Contract Nos. F41622-97-C-0022 and F41622-98-C-0011 (see Exhibit A). In the Final Decision, the Government contends that ARC, and possibly St. Paul Travelers, are indebted to the Government in the amount of $25,773,662.17 for alleged re-procurement and other costs associated with a default termination of ARC.

7. In accordance with 41 U.S.C. § 609, ARC and St. Paul Travelers hereby file the instant action within twelve (12) months of receipt of the Contracting Officer's Final Decision.

## BACKGROUND FACTS

### I. The Contracts

8. On September 27, 1997, the Government awarded ARC Contract No. F41622-97-C-0022 (the "M-2 Contract") for the construction of 122 units of new military family housing at Malmstrom AFB, Montana. The contract price was $14,359,380.

9. On March 27, 1998, the Government awarded ARC Contract No. F41622-98-C-0011 (the "M-3 Contract") for the construction of 72 units of new military family housing at Malmstrom AFB, Montana. The contract price was $11,627,000. The M-2 and M-3 Contracts are hereinafter referred to as the "Contracts".

10. In conjunction with the Contracts, St. Paul Fire and Marine Insurance Company and St. Paul Mercury Insurance Company (collectively "St. Paul Travelers") provided performance bonds ("Bonds") as required by the Miller Act, §§ 1-4, 40 U.S.C. § 270a-270d superceded by 40 U.S.C. § 3131 et. seq.

## II. Performance

11. ARC began construction in earnest of the M-2 Contract in late May 1998.

12. ARC completed its entire scope of work under the M-2 Contract on October 29, 1999.

13. ARC began construction in earnest of the M-3 Contract in July 1999.

14. ARC completed its entire scope of work under the M-3 Contract on November 21, 2000.

## III. Government Acceptance

15. ARC turned the M-2 housing units over to the Government on July 30, 1999, August 30, 1999, September 30, 1999, and October 29, 1999. The Government accepted the housing units and common areas as full and complete on each turnover date.

16. ARC turned the M-3 housing units over to the Government on September 28, 2000, October 10, 2000, October 12, 2000, November 7, 2000, and November 21, 2000. The Government accepted the housing units and common areas as full and complete on each turnover date.

17. Upon information and belief, the Government has occupied the accepted M-2 and M-3 housing units and common areas from the dates of acceptance to the present.

## IV. The Government's Purported Revocations of Acceptance and Default Terminations

18. Pursuant to its December 19, 2001 Final Decision, the Government purported to revoke its acceptance of the M-2 Contract and default terminate ARC.

19. Pursuant to its September 17, 2002 Final Decision, the Government purported to revoke its acceptance of the M-3 Contract and default terminate ARC.

20. The Government alleged that ARC's construction methods and resultant Project conditions were defective. Specifically, the Government alleged that ARC's backfill and compaction practices, and subsequent settlement and subsidence, were latent defects justifying its revocations and terminations of the M-2 and M-3 Contracts.

**V. The Government's Terminations Were Improper**

21. The Government's revocations were ineffective and the default terminations were improper on both the M-2 and M-3 Contracts as the Government had substantial and repeated knowledge at the time of the Government's acceptance, of ARC's backfill and compaction practices and the settlement and subsidence conditions. In other words, the alleged defects asserted by the Government as a basis for revocation were patent defects, not latent.

22. Government inspectors on both the M-2 and M-3 Contracts routinely observed and communicated what they considered to be improper backfill and compaction practices throughout ARC's performance. Government representatives also routinely discussed the allegedly defective backfill and compaction practices throughout ARC's performance.

23. The Government cost reductions required the use of locally existing soils for backfill. The Government knew the conditions of the locally existing soils, including but not limited to, the prevalence of clay.

24. The Government also failed to contemporaneously review project documentation and reports that would have put the Government on further notice regarding ARC's allegedly defective backfill and compaction practices, prior to acceptance.

25. The Government was also aware of the settlement and subsidence conditions prior to acceptance. Specifically, Government inspectors and personnel observed and communicated their observations that there was allegedly defective settlement and subsidence conditions, including but not limited to: sinking stoops or patios, garage slab settlement, garage foundation cracking, and settlement of sidewalks, as an on-going problem prior to the Government's acceptance.

26. The default terminations were also improper on both the M-2 and M-3 Contracts because the alleged defects were caused by defective specifications issued by the Government, as a result of Government mandated cost cutting measures. ARC warned the Government of the potential problems surrounding the cost-cutting measures prior to award of the M-2 and M-3 Contracts. The Government failed to heed ARC's warnings.

27. The default terminations were also improper because the Government failed to perform necessary maintenance adjustments to the support screwjack columns supporting the first floor assembly. This failure caused the upper floors to rise, causing drywall and framing to separate, doors and windows to jam, and separation of cabinets from walls, the very defects upon which the Government based the M-2 and M-3 default terminations.

## VI. The Litigation

28. Following the default terminations, ARC noted its appeals of the M-2 and M-3 Final Decisions in ASBCA Nos. 53723 and 54038, respectively.

29. ARC and the Government litigated the propriety of the default terminations on both the M-2 and M-3 Contracts from November 30, 2004 to December 17, 2004 before ASBCA Judge Elizabeth A. Tunks.

30. Judge Tunks has not yet issued a ruling on the propriety of the default terminations, and the cases are still pending.

**VII. The December 1, 2005 Final Decision is Premature**

31. The Government's Final Decision, dated December 1, 2005, purports to assess damages in the form of re-procurement costs prior to any determination of liability.

32. In order for ARC or St. Paul Travelers to be liable for any damages, the default terminations must be ruled proper.

33. If the default terminations are found to be improper, ARC and St. Paul Travelers would not be liable for any re-procurement damages.

34. The Government's assessment of damages prior to a determination of liability is premature and improper.

**VIII. The Government's Assessment of Damages is Excessive**

35. The Government's assessment of $25,773,662.17 in alleged re-procurement costs far exceeds amounts permitted by law.

36. Prior to entering into the M-2 and M-3 Contracts, ARC suggested certain changes in the specifications and construction methods in order to improve the final product.

37. The Government rejected ARC's suggested changes because the changes would have caused a price increase in the M-2 and M-3 Contracts.

38. The alleged repair work contained in the Final Decision assessment of damages includes the ARC suggested changes that the Government previously rejected.

39. Upon information and belief, the alleged Government repair work contains numerous instances of work significantly beyond what was required by the M-2 and M-3 Contracts.

40. The Government's proposed damages are also unnecessary and excessive.

41. The "accepted" units are suitable for their intended purpose, as Air Force families have, upon information and belief, occupied the housing units for over seven years.

42. The Government's assessment is also excessive because it contains $22,691,613.13 in estimated amounts not yet expended.

43. The Government may not assess amounts it has not yet expended.

## IX. St. Paul Fire and Marine Insurance Company and St. Paul Mercury Insurance Company ("St. Paul Travelers") are Not Bound By the Final Decision

44. The Final Decision is not addressed to the St. Paul Mercury Insurance Company and/or St. Paul Fire and Marine Insurance Company, the sureties for the M-2 and M-3 Contracts.

45. The Final Decision purports to make a demand on St. Paul Travelers as ARC's surety "in the event that ARC cannot provide payment in full".

46. St. Paul Travelers was not a party to the ASBCA actions between ARC and the Government, and is not ARC's surety for either the M-2 Contract or the M-3 Contract.

47. The Final Decision cannot bind St. Paul Travelers.

## X. St. Paul Fire and Marine Insurance Company and St. Paul Mercury Insurance Company ("St. Paul Travelers") are Discharged From Liability

48. The Contracts required the Government to conduct inspections and employ certain quality control measures to assure proper construction methods and compliance with the terms and specifications of the Contracts.

49. The Contracts required the Government to withhold payment to ARC if it knew or should have known of any alleged deviations from proper construction methods or alleged deviations from the terms and specifications of the Contracts.

50. In issuing the Bonds, St. Paul Travelers relied upon the Government's requirement to inspect and provide quality control measures and to withhold payment for any alleged deviations from the terms and specifications of the Contracts.

51. The Government failed to provide the necessary inspections and quality control measures required by the Contracts.

52. St. Paul Travelers has been prejudiced by the Government's failure to inspect and failure to provide quality control measures required by the Contracts.

53. The Government knew and should have known of certain alleged deviations from proper construction methods and the terms and specifications of the Contracts.

54. Despite that knowledge, the Government failed to withhold payments in connection with ARC's known alleged deficiencies, also to the prejudice of St. Paul Travelers.

**Count I – (Breach of Contract)**

55. Paragraph Nos. 1 - 54 are hereby incorporated as if fully set forth herein.

56. The Government's improper default terminations, and its premature Final Decision and the excessive damages sought therein, constitute material breaches of the Contracts.

57. The Government abused its discretion in default terminating the Contracts.

58. The Government owed an equitable duty to St. Paul Travelers, and in materially breaching the Contracts and in abusing its discretion, the Government violated that duty.

59. As a direct and proximate result of the Government's improper termination, ARC and St. Paul Travelers have incurred and will continue to incur damages, including but not limited to reasonable attorneys' fees and consulting fees.

60. The Government materially breached the Contracts and violated the Contract Disputes Act by issuing its premature Final Decision, and seeking excessive damages, which are substantially beyond what the Government actually expended.

61. As a direct and proximate result of the Government's premature Final Decision, and seeking of excessive damages, which are substantially beyond what the Government actually expended, ARC and St. Paul Travelers have incurred and will continue to incur damages, including but not limited to reasonable attorneys' fees and consulting fees.

**Count II – (Declaratory Judgment)**

62. Paragraph Nos. 1 - 61 are hereby incorporated as if fully set forth herein.

63. The controversy is ripe and justiciable as to ARC, as the Government directly assessed the disputed damages against ARC.

64. The controversy is ripe and justiciable as to St. Paul Travelers, to the extent it is found that the Government assessed the disputed damages against St. Paul Travelers.

65. A declaration of the parties' rights with respect to the Government's premature Final Decision, and the Government's assessment of excessive damages will resolve the controversy.

66. ARC has suffered actual harm and will continue to suffer harm if there is not a declaration of the parties' respective rights. ARC has incurred expenditures, has been assessed damages, and will continue to be assessed damages prior to a finding of liability.

67. St. Paul Travelers has suffered actual harm and will continue to suffer harm if there is not a declaration of the parties' respective rights. St. Paul Travelers has incurred expenditures, has purportedly been assessed damages, and will continue to be assessed damages prior to a finding of ARC's liability and any liability on the Bond.

68. Pursuant to 28 U.S.C. § 1491(a); 28 U.S.C. § 1507; and Rule 57 of the RUSCC, Plaintiffs pray for declaratory relief as follows:

(a) That the Final Decision is premature and must be withdrawn until a final ASBCA ruling on the propriety of the default terminations for the M-2 and M-3 Contracts.

(b) That the damages contained in the Final Decision are excessive and any amounts expended for work not contained in the Contracts be stricken.

(c) That the damages contained in the Final Decision are excessive and any amounts must be limited to amounts the Government actually spent.

(d) That the damages contained in the Final Decision are excessive because the housing units are fit, and are being utilized, for their intended purpose.

(e) That St. Paul Travelers is not bound by the Final Decision.

(f) That St. Paul Travelers has been released and discharged on the M-2 Contract and M-3 Contract Bonds by reason of the failure of the Government to mitigate its damages and by the Government's failure to comply with its duties and requirements under the Contracts.

(g) That St. Paul Travelers has been released and discharged on the M-2 Contract and M-3 Contract Bonds by reason of the failure of the Government to provide inspections or quality control measures.

(h) That St. Paul Travelers has been released and discharged on the M-2 Contract and M-3 Contract Bonds by reason of the Government's overpayment for work allegedly not in conformity with the contractual requirements.

WHEREFORE, premises considered, the Plaintiffs pray:

(a) that Summons issue against the Government requiring it to Answer;

(b) that Plaintiffs have a judgment against the Government in an amount sufficient to compensate for all damages proximately caused by the Government's material breaches;

(c) that Plaintiffs have a judgment against the Government for costs and attorneys' fees associated with this action;

(d) that an order issue declaring:

1. That the Final Decision is premature and must be withdrawn until a final ruling on the propriety of the terminations.

2. That the damages contained in the Final Decision are excessive and any amounts expended for work not contained in the Contracts be stricken.

3. That the damages contained in the Final Decision are excessive and any amounts expended in excess of the amounts actually incurred by the Government be stricken.

4. That the damages contained in the Final Decision are excessive because the housing units are fit and are being utilized for their intended purpose.

5. That St. Paul Travelers is not bound by the Final Decision.

6. That St. Paul Travelers has been released and discharged on the M-2 and M-3 Contract Bonds by reason of the failure of the Government to mitigate its damages.

7. That St. Paul Travelers has been released and discharged on the M-2 and M-3 Contract Bonds by reason of the failure of the Government to provide inspections or quality control measures.

8. That St. Paul Travelers has been released and discharged on the M-2 and M-3 Contract Bonds by reason of the Government's overpayment for work allegedly not in conformity with the Contract requirements.

Dated: November 30, 2006

Robert G. Watt, Esquire
Edward J. Parrott, Esquire
Watt, Tieder, Hoffar &
Fitzgerald, LLP
8405 Greensboro Dr., Ste. 100
McLean, Virginia 22102
Phone: (703) 749-1000
Fax: (703) 749-8029

# EXHIBIT A

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 311TH HUMAN SYSTEMS WING (AFMC)**
**BROOKS CITY-BASE TEXAS**

01 DEC 2005

MEMORANDUM FOR WATT, TIEDER, HOFFAR & FITZGERALD
ATTORNEY FOR AMERICAN RENOVATION & CONSTRUCTION COMPANY
8405 GREENSBORO DRIVE, SUITE 100
MCLEAN, VA 22102

WTH&F Rec'd on 12/12/05 By Copies To:

FROM: 311 HSW/PKVH
8150 AEROMEDICAL ROAD
BROOKS CITY-BASE TX 78235-5123

SUBJECT: Contracting Officer's Final Decision, Contract Nos. F41622-97-C-0022 (Phase I & II) & F41622-98-C-0011 (Phase III)

1. Pursuant to FAR 52.233-1 – DISPUTES, FAR 49.402-2 EFFECT OF TERMINATION FOR DEFAULT, FAR 49-402-6 REPURCHASE AGAINST CONTRACTOR'S ACCOUNT, FAR 49-402-7 OTHER DAMAGES, FAR 33.211 CONTRACTING OFFICER'S DECISION, and FAR 32.608 NEGOTIATION OF CONTRACT DEBTS, I hereby inform American Renovation & Construction Company (ARC), and if it cannot pay, then its surety St Paul Traveler's, is indebted to the United States Government in the amount of $25,773,662.17 on Contract Nos. F41622-97-C-0022 (Phase I & II) & F41622-98-C-0011 (Phase III). In addition, we rely on the following FAR clauses that were incorporated by reference into the subject contracts: FAR 52.246-12 INSPECTION OF CONSTRUCTION and FAR 52.249-10 DEFAULT (FIXED-PRICE CONSTRUCTION).

2. On 2 October 2001, Ms. Rebecca Rounsavill, contracting officer, partially terminated for default Contract No. F41622-98-C-0011, which contract was for the construction of 72 Military Family Housing units at Malmstrom AFB, MT, known as Phase III of Minuteman Village. Ms. Rounsavill partially terminated the contract for default based on ARC's failure to provide the contractually required slope away from the houses in Phase III in Minuteman Village at Malmstrom AFB, MT, and based on ARC's failure to complete the contractually required landscaping on those same houses. ARC appealed this decision to the Armed Services Board of Contract Appeals (ASBCA) and the case was docketed as ASBCA No. 54039. The appeal of the partial termination for default on

Contract No. F41622-98-C-0011 was dismissed by the ASBCA in a decision dated 24 June 2003. As a result, ARC is responsible for the reprocurement repair costs resulting from this termination for default.

3. On 19 December 2001, Ms. Rebecca Rounsavill revoked acceptance and terminated for default Contract No. F41622-97-C-0022, which contract was for the construction of 122 Military Family Housing units at Malmstrom AFB, MT, known as Phases I & II of Minuteman Village. On 17 September 2002, she revoked acceptance and terminated for default Contract No. F41622-98-C-0011, Phase III of Minuteman Village. ARC appealed both default terminations to the ASBCA and those appeals were docketed as ASBCA No. 53723 (Contract No. F41622-97-C-0022) and ASBCA No. 54038 (Contract No. F41622-98-C-0011).

4. Commencing on 30 November 2004 and continuing until 17 December 2004, a hearing was held before ASBCA Judge Elizabeth A. Tunks to litigate the propriety of the two default terminations. The ASBCA has not yet issued a ruling on these appeals. However, the Government has incurred substantial costs and will incur additional significant costs in the future to repair the houses, for which the Government claims ARC are liable. In May 2005, the Government attended what ARC and St Paul represented was a settlement meeting with attorneys for ARC and St Paul, and a representative of St Paul. At that meeting, the Government presented its oral demand for payment, including a detailed breakdown of its damages. That attempt to negotiate a resolution to this matter failed when ARC and St Paul rejected the Government's damages in total.

5. ARC's failure to perform these two contracts in accordance with the plans and specifications contained in the two above referenced contracts has resulted in significant distress and damage to the houses and surrounding areas that require repair and remediation. As a result, ARC is indebted to the United States Government in the amount of $25,773,662.17 for those reprocurement and associated costs.

6. I find that ARC is liable to the Air Force and hereby demand payment for reprocurement repair, and associated costs for the following reasons:

a. ARC failed to construct the houses in accordance with ARC's design, including plans and specifications.

b. ARC failed to use the contractually required material for backfill around the foundations of the houses and below the basement.

8. The Government asserts that ARC is liable for payment of this entire amount and issues this demand letter and contracting officer's final decision requesting immediate payment of all amounts indicated above.

9. As a result of ARC's failures, the Government revoked acceptance and terminated the contracts for default, as described above. That revocation reinstates the executory period of the contract, to include the performance bond. Thus, the Government is also making its demand against St Paul Travelers, the surety on the performance bonds in the event that ARC cannot provide payment in full.

10. As a result of the indebtedness described above, any amounts not paid within 30 days from the date of this letter will bear interest from the date of this letter. The interest rate will be the rate established by the Secretary of the Treasury under Public Law 92-41. If immediate payment is not practicable or if the amount is disputed, ARC may submit a proposal for deferment.

a. The debt will be subject to the Department of Treasury offset from Federal payments due to ARC. A fee for each offset made will be added to the debt as part of the administrative charge. Federal payments eligible for this offset include contract payments, Federal income tax refunds, and other payments not exempt.

b. The debt may be reported to a credit bureau.

c. The debt may be referred to a private collection agency. In such case, an administrative cost will be added to the debt.

d. The debt may be referred to the Department of Justice for litigation. In such case, an administrative cost will be added to the debt.

11. The payment office may, at any time, exercise its right to take offset action against any other unpaid invoices. Offsets may continue until the debt, including any accrued interest, penalty, and administrative charges, are recouped.

12. I am the responsible official designated for determining the amount of this debt and for its collection. I have considered the factors outlined in FAR 32.610 and FAR 33.211 in this decision.

13. This constitutes the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals [Armed Services Board of Contract

c. ARC failed to properly compact and test the backfill in utility trenches and around the foundations of the houses.

d. ARC intentionally and willfully failed to install egress window well drains in accordance with its design drawings and engaged in active concealment of that failure to the detriment of the occupants of the houses.

e. In some cases, ARC failed to properly construct, block and insulate foundation wall penetrations. This intentional and willful failure resulted in the infiltration of water through these penetrations into the basements causing damage in the basements of some of the housing units.

f. ARC failed to properly isolate the structural elements in the basements to allow for movement of the houses, as requested by the Air Force, and as required by ARC's Architect and Engineer, Ed Cass & Associates.

7. As a direct and proximate result of ARC's failure to construct the houses in Minuteman Village in accordance with ARC's plans and specifications, the Government was damaged in the amount of $25,773,662.17, as more specifically set forth below.

a. $1,850,597.54 for repair of 15 units in the Phase I of the Minuteman Village housing area to repair the units and return them to a habitable condition, including the costs to relocate military families residing in the units. FAR 49.402-6.

b. $628,352.74 for the investigation into the defects of the houses. FAR 49-402- and *Nagy Enterprises*, ASBCA, No. 48815, *et al.*, 98-1 BCA ¶ 29,695.

c. $423,098.11 for litigation costs. FAR 49.402-7.

d. $32,317.00 for SABER work on egress window well repairs and mold repair. FAR 49.402-6.

e. $147,683.65 for other necessary repairs such as stoop repairs, air conditioning pad repairs, and other repairs accomplished by the Corp of Engineers. FAR 49.402-6.

f. $22,691,613.13 representing the Government's good faith estimate of the costs to repair the remaining 179 units in Minuteman Village, including the cost to relocate military families residing in the units. FAR 33.201, 49.204-6, 49.204-7 and 52.249-10(d).

Appeals, Skyline Six, 5109 Leesburg Pike, Falls Church, VA 22041-3208] and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract(s) by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. § 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Gary J. Macdecy

GARY J. MACDECY
Contracting Officer

cc: Soltek Pacific
Mr Steve Thompson
2424 Congress Street
San Diego, CA 92110

St. Paul Travelers
6100 219th Street SW
Suite 300
Mountlake Terrace, WA 98043

Anthony Dethloff
4 Skyline Place
Mammoth Lakes CA 93546

Anthony Dethloff
PO Box 68
Mammoth Lakes CA 93546-0068

American Renovation & Construction Company
C/O Mr. Anthony Dethloff
817 Balour Drive
Encinitas CA 92024-3944