No. 06-813C
(Judge Sweeney)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMERICAN RENOVATION AND CONSTRUCTION COMPANY, ST. PAUL MERCURY INSURANCE COMPANY, AND ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

Plaintiffs,

v.

THE UNITED STATES OF AMERICA,

Defendant.

**PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER CLAIMS OF AMERICAN RENOVATION AND CONSTRUCTION COMPANY TO THE ARMED SERVICES BOARD OF CONTRACT APPEALS**

Edward J. Parrott, Esquire
WATT, TIEDER, HOFFAR
& FITZGERALD, L.L.P.
8405 Greensboro Drive
Suite 100
McLean, VA 22102

Attorney for Plaintiffs

February 8, 2007

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................ii

OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER CLAIMS OF AMERICAN RENOVATION AND CONSTRUCTION COMPANY TO THE ARMED SERVICES BOARD OF CONTRACT APPEALS……………………………1

PLAINTIFFS' BRIEF ..........................................................................................................2

INTRODUCTION ..............................................................................................................2

PROCEDURAL BACKGROUND.......................................................................................2

LEGAL FRAMEWORK GOVERNING CONSOLIDATION ...........................................3

A. 41 U.S.C. § 609(d) ..........................................................................................3

B. Legislative History of 41 U.S.C. 609(d) .....................................................4

C. Courts and Boards Have Allowed Contractors to Bring Claims in Separate Fora ..............................................................................................................4

ARGUMENT .......................................................................................................................6

A. Preliminary and Overriding Considerations Weighing Against Consolidation ..................................................................................................6

B. The <u>Rockwell Automation</u> Factors Weigh Against Consolidation................7

C. Consolidation Would Deprive ARC of the Important Option to Select What it Deems the Appropriate Forum to Litigate its Claims.......................11

D. The Convenience of the Parties and Witnesses do Not Weigh in Favor of Consolidation ................................................................................................11

REQUEST FOR ORAL ARGUMENT ...........................................................................11

CONCLUSION ..................................................................................................................12

# TABLE OF AUTHORITIES

## CASES

American Nucleonics Corp., ASBCA No. 27,894, 83-1 BCA ¶ 16, 520 ..................4, 5, 8

American Telecom Corp. v. United States, 59 Fed. Cl. 467, 473 (2004) ......................4, 8

Marshall Associated Contractors, Inc. v. United States, 31 Fed. Cl. 809 (1994) ..........5, 8

Multi-Roof Systems Co., Inc. v. United States, 5 Cl. Ct. 245 (1984) ............................3, 4

Northrop Grumman Corp. v. United States, 70 Fed. Cl. 230 (2006) ................................3

Precision Pine & Timber, Inc. v. United States, 45 Fed. Cl. 134 (1999).........................4, 9

Rockwell Automation, Inc. v. United States, 70 Fed. Cl. 114, 126 (2006) ..................3, 7

## STATUTES, RULES AND REGULATIONS

28 U.S.C. § 1491 ..........................................................................................................2

41 U.S.C. § 601 et seq. ..................................................................................................2

41 U.S.C. § 609(d) ..............................................................................2, 3, 4, 6, 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMERICAN RENOVATION AND CONSTRUCTION COMPANY, ST. PAUL MERCURY INSURANCE COMPANY, AND ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | ) | |
| **Plaintiffs,** | ) | **No. 06-813C** |
| **v.** | ) | **(Judge Sweeney)** |
| THE UNITED STATES, | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER CLAIMS OF AMERICAN RENOVATION AND CONSTRUCTION COMPANY TO THE ARMED SERVICES BOARD OF CONTRACT APPEALS**

Plaintiffs, American Renovation and Construction Company ("ARC"), St. Paul Mercury Insurance Company and St. Paul Fire and Marine Insurance Company, by counsel, submit this opposition to Defendant's motion to transfer ARC's claims to the Armed Services Board of Contract Appeals ("ASBCA"). As set forth below, there is little commonality of facts or issues between the two matters. Moreover, separate proceedings present no likelihood of inconsistent results. Finally, separate proceedings will serve the parties, witnesses and the interests of justice. For these reasons, Plaintiffs respectfully request that this Honorable Court deny Defendant's motion.[1] In support of its opposition, Plaintiffs rely upon the pleadings and the following Brief.

[1] Plaintiffs are simultaneously filing a motion to stay this action in its entirety until a decision is rendered on the appeal before the ASBCA.

**PLAINTIFFS' BRIEF**

## I. INTRODUCTION

ARC, St. Paul Mercury Insurance Company and St. Paul Fire and Marine Insurance Company initiated this action pursuant to the Tucker Act, 28 U.S.C. § 1491 and the Contract Disputes Act, 41 U.S.C. § 601 et seq., in response to a December 1, 2005 Contracting Officer's Final Decision ("Final Decision") assessing excess reprocurement costs of over $25,000,000 against Plaintiffs. The excess reprocurement costs allegedly arise from the Government's default termination of Plaintiff ARC on two construction contracts, contracts M-2 and M-3. As permitted by the Final Decision, Plaintiffs brought the instant appeal to this Honorable Court. As outlined in Plaintiff's Complaint, Plaintiffs allege that the Government's assessment of reprocurement costs was premature and excessive.[2]

The Government now has filed a Motion to Transfer ARC's claims to the ASBCA, where ARC previously had challenged the propriety of the Government's two default terminations. The Government argues that this Court should exercise its discretion pursuant to 41 U.S.C. 609(d), which affords this Court authority to consolidate suits arising from one contract "in the interests of justice," or for the convenience of the parties or witnesses. An analysis of the factors the Court of Federal Claims looks to in determining whether to consolidate matters, however, does not support transfer to the ASBCA in this case.

## II. PROCEDURAL BACKGROUND

On March 17, 2002 and December 15, 2002, ARC challenged the M-2 and M-3 default terminations by appealing those Final Decisions to the ASBCA. A three-week ASBCA hearing subsequently was conducted from November 30, 2004 to December 15, 2004, to determine the

[2] The majority of costs outlined in the December 1, 2005, Final Decision are estimated, and have not yet been incurred.

propriety of the Government's terminations for default. Post-hearing briefs and Reply briefs were thereafter submitted to the ASBCA on May 13, 2005, and July 5, 2005. No decision has been rendered on the two underlying appeals.

On December 1, 2005, and notwithstanding the fact that no decision had been issued on the underlying M-2 and M-3 appeals, the Government issued a Final Decision assessing reprocurement costs against ARC, St. Paul Mercury Insurance Company and St. Paul Fire and Marine Insurance Company. ARC, St. Paul Mercury Insurance Company and St. Paul Fire and Marine Insurance Company filed their Complaint in this Court on November 30, 2006 challenging the assessment.

## III. LEGAL FRAMEWORK GOVERNING CONSOLIDATION

### A. 41 U.S.C. § 609(d)

41 U.S.C. § 609(d) affords this Court broad discretion to order the consolidation of two or more suits "[i]f two or more suits arising from one contract are filed in the United States Court of Federal Claims and one or more agency boards, for the convenience of the parties or witnesses or in the interest of justice…." This Court may order consolidation of such suits either in this Court or "to or among the agency boards involved." 41 U.S.C. § 609(d); see also Northrop Grumman Corp. v. United States, 70 Fed. Cl. 230 (2006). The Court's determination of whether to consolidate actions pursuant to Section 609(d) is generally an ad hoc determination. Multi-Roof Systems Co., Inc. v. United States, 5 Cl. Ct. 245 (1984). In determining whether consolidation is in the interests of justice or the convenience of the parties or witnesses, the Court of Federal Claims considers various factors, including the contractor's choice to litigate its eligible claims in separate fora. [3]

---

[3] Rockwell Automation outlines six factors the Court of Federal Claims usually considers in determining whether to consolidate two suits arising from one contract: "whether the issues arise from the same contract, whether the issues

**B. Legislative History of 41 U.S.C. 609(d)**

The Court of Federal Claims has recognized that the legislative history of Section 609(d) reflects a policy to respect a contractor's choice to litigate its eligible claims in separate fora:

> [i]t is intended that the Court of Claims have the same ultimate authority to consolidate suits that are split between the court and the agency boards, but the committees specifically recommend that the Court of Claims be sensitive to the reasons why the suits have been split, and should not consolidate only for the sake of consolidation.
>
> ***
>
> The Court of Claims, when reviewing the decision to consolidate, should not arbitrarily take away the contractor's right to his day in court by consolidating two suits in the agency boards, and thus forcing one suit out of the court. It is the intent of the section to make available the opportunity to consolidate like suits in one jurisdiction, but this action should weigh the positions of the parties involved.

S.Rep. No. 95-1118, 95th Cong., 2d Sess. *reprinted in* 1978 U.S. Code Cong. & Ad.News 5235, 5265; see also Precision Pine & Timber, Inc. v. United States, 45 Fed. Cl. 134 (1999); Multi-Roof Systems Co., Inc. v. United States, 5 Cl. Ct. 245 (1984) ("This Court appreciates the policy found in the legislative history of the CDA that consolidation should not be arbitrarily effected without due consideration for the contractor's right to its day in court.") (citations omitted).

**C. Courts and Boards Have Allowed Contractors to Litigate Claims in Separate Fora**

Consistent with the legislative history outlined above, both the Court of Federal Claims, as well as various boards of contract appeals, have allowed contractors to challenge default terminations in one forum, and the Government's assessment of excess reprocurement costs in another forum. See American Telecom Corp. v. United States, 59 Fed. Cl. 467, 473 (2004) (describing American Nucleonics Corp., ASBCA No. 27,894, 83-1 BCA ¶ 16, 520, which

---

overlap or are duplicative, where the plaintiff initially filed or appealed its claims, whether either forum has made significant progress in rendering judgment on any claim, how resolution of the matters in separate fora would affect the parties', board's, or court's resources, and whether inconsistent results are likely to arise from actions in separate proceedings." 70 Fed. Cl. 114, 126 (2006) (citations omitted). An analysis of each of these factors as applied to the facts of this case is provided in Section IV.B below.

"expressly recognized that one forum may determine the propriety of the termination and another forum may determine the availability of the assessment of the reprocurement costs."); Marshall Associated Contractors, Inc. v. United States, 31 Fed. Cl. 809 (1994); Premiere Building Servs., Inc., ASBCA No. 51804, 01-2 BCA ¶ 31,626 (allowing a contractor to challenge the Government's excess reprocurement costs despite the contractor's unsuccessful attempt to challenge the underlying termination for default in the Court of Federal Claims); American Nucleonics Corp., ASBCA No. 27,894, 83-1 BCA ¶ 16520.

In Marshall, the Court of Federal Claims refused to transfer a contractor's challenge of the Government's excess reprocurement costs, notwithstanding the fact that the contractor had previously challenged the Government's termination for default of the underlying contract before the Interior Board of Contract Appeals ("IBCA"). The court wrote that a contractor's "claim for reprocurement costs may be brought before this court, notwithstanding a claim that is brought before the IBCA by the same plaintiff, under the same contract, challenging a default termination." 31 Fed. Cl. at 815 (citations omitted). In that instance, the court stayed the contractor's claim challenging reprocurement costs pending a final decision from the IBCA.

In American Nucleonics, the ASBCA allowed the contractor to challenge the Government's excess reprocurement costs, notwithstanding the fact that the contractor was also challenging the underlying default termination in the Court of Federal Claims. ASBCA No. 27,894, 83-1 BCA ¶ 16520. In rejecting the Government's motion to transfer the contractor's claim, the Board noted that the Final Decision assessing reprocurement costs advised the contractor that it could appeal the decision to either the ASBCA or the Court of Federal Claims. The Board wrote, "the issues of the default termination and the reprocurement excess cost determination each involved a separate and distinct decision." Id. As in Marshall, the Board

stayed the contractor's reprocurement costs challenge until a decision was rendered on the default termination litigation.

## IV. ARGUMENT

ARC does not dispute that this Court has discretion to consolidate ARC's claims to the ASBCA pursuant to 41 U.S.C. 609(d). However, the interests of justice, as well as convenience to the parties and witnesses, do not suggest consolidation in this case. Additionally, consolidation would deprive Plaintiffs of the important choice of forum to challenge the Government's assessment of over $25,000,000 in excess reprocurement costs.

### A. Preliminary and Overriding Considerations Weighing Against Consolidation

There are two preliminary and overriding considerations that weigh against consolidation. First, and as explained in more detail in Section IV.B below, ARC's claims here are wholly separate and distinct from its claims before the ASBCA. Although we will explain the diversity of issues in more detail, it is instructive at the outset to recognize the distinct timing of the issues (issues of contract performance before termination previously at the ASBCA versus issues of reprocurement after termination presently before this Court). In the appeal before the ASBCA, ARC challenged the propriety of the Government's terminations of contracts M-2 and M-3 for default. That appeal exclusively involved issues before termination, to include contract formation, contract administration and contract performance. ARC's reprocurement cost challenge to this Court, on the other hand, will focus solely on the Government's reprocurement efforts after the contracts were terminated for default.

The second overriding consideration weighing against consolidation is that ARC's claims before the ASBCA are not "ripe" for consolidation with its claims before this Court. Consolidation is generally appropriate where two related claims can be joined and heard

simultaneously before one tribunal. However, this cannot happen here, as ARC has already litigated is claims before the ASBCA in full. The record has been closed for years. ARC's ASBCA claims now await only a decision, and have been awaiting a decision since the final briefing on July 5, 2005, over a year and a half ago. There are no ongoing issues or claims in that forum with which to consolidate ARC's claims before this Court. To hear ARC's reprocurement cost challenge, the ASBCA would have to entertain that claim for the first time, from the beginning.

41 U.S.C. §609(d) authorizes this Court to consolidate matters only when both matters are pending. See Rockwell Automation, Inc. v. United States, 70 Fed. Cl. 114, 126 (2006) ("For this court to have authority to transfer and consolidate an action pending before an agency board, suits arising from one contract must be pending in this court and concurrently pending before an agency board."). In other words, this Court would not have authority to consolidate if the ASBCA had already reached a decision. Clearly, consolidation would not be appropriate in that context. The context here is similar because the ASBCA has heard the parties' claims and defenses in their entirety. The mere fact that the ASBCA has not rendered a decision does not convert this case into one in which consolidation is desirable (e.g., where both fora are just beginning to litigate one party's claims).

In sum, the issues before the ASBCA are distinct from ARC's reprocurement costs challenge. In addition, consolidation is not appropriate here because the ASBCA has concluded litigation of ARC's claims long ago, and only an ASBCA decision remains.

### B. The Rockwell Automation Factors Weigh Against Consolidation

In addition to the two overriding considerations above, a full analysis of the six factors outlined in Rockwell Automation demonstrates that transferring ARC's claims is unnecessary for

the interests of justice, and would deprive ARC of an important choice of forum to challenge the Government's excess reprocurement costs.

**1. The Issues Arise From the Same Contracts**

ARC's challenge of the Government's reprocurement costs does arise from the same contracts at issue before the ASBCA. However, this factor alone does not compel transfer. See American Telecom Corp. v. United States, 59 Fed. Cl. 467, 473 (2004); Marshall Associated Contractors, Inc. v. United States, 31 Fed. Cl. 809 (1994); Premiere Building Servs., Inc., ASBCA No. 51804, 01-2 BCA ¶ 31,626; American Nucleonics Corp., ASBCA No. 27,894, 83-1 BCA ¶ 16520. In addition, the issues before the ASBCA (propriety of ARC's default terminations) and the issues to be addressed in this Court (excess reprocurement costs) are so analytically distinct that the "same contract" factor is not compelling.

**2. The Issues do not Overlap and are not Duplicative**

The issues in this case do not overlap with and are not duplicative of the issues before the ASBCA. The issues of challenging a termination for default and challenging the Government's subsequent assessment of reprocurement costs are analytically distinct. One is a question of entitlement (i.e., propriety of the default termination), and the other is a question of damages (assuming the propriety of the default terminations is upheld). The general and specific nature of each case is different.

Specifically, the factual and legal issues before the ASBCA were different from those to be put before this Court. The primary issues addressed at the ASBCA hearing and in the briefs include: (a) the history of soils problems at the Project site; (b) soil and drainage conditions at the site; (c) Government changes to Project design; (d) the patency (or not) of defects; (e) the Government's acceptance of the Project; (f) the expansive quality of the soil; (g) causes of

settlement and subsidence; (h) responsibility for design; (i) actual distribution of soils reports (or not); (j) compaction percentages applied to embankment; (k) height of embankment lifts; (l) excavation protection methods; (m) composition of backfill material; (n) propriety of overexcavation; (o) dampproofing application; (p) waterproofing; (q) installed placement of drain tile; and (r) the Contracting Officer's exercise of discretion.

ARC's challenge to the Government's reprocurement cost assessment, on the other hand, will not involve any of the foregoing issues addressed at the ASBCA hearing. The sole issue before this Court will be what it should cost the Government to repair any defects identified by the ASBCA decision. In this regard, it is worth noting that the Contracting Officer's December 1, 2005, Final Decision assessing over $25,000,000 in excess reprocurement costs is based largely on estimated costs. In other words, the Government has yet to spend the majority of the damages sought. It appears, therefore, that the majority of facts to be addressed in the excess reprocurement costs case have yet to occur, and necessarily were not addressed at the ASBCA. The questions before each tribunal are separate inquiries involving distinct issues. The issues do not overlap, and are not duplicative.

**3. Where the Plaintiff Originally Filed its Claim**

ARC originally filed its claim challenging the Government's termination of the M-2 and M-3 contracts for default before the ASBCA. However, ARC opted to file this claim, which is analytically distinct from the claims before the ASBCA, in this forum. The Court of Federal Claims has written of this factor, "There does not seem to be any inherent reason that if the Plaintiff filed first at the board of contract appeals, then a lawsuit at the Court of Federal Claims should be consolidated." Precision Pine & Timber, Inc. v. United States, 45 Fed. Cl. 134 (1999).

The December 1, 2005 Final Decision, authored by the Government, gave ARC the option of appealing that decision to either the ASBCA or the Court of Federal Claims.

**4. Whether Either Forum has Made Significant Progress in Rendering Judgment on any Claim**

The ASBCA closed the record on ARC's challenge to the terminations for default. The ASBCA has only left to decide the matter. However, the ASBCA has made no progress on the issue of the Government's assessment of reprocurement costs. In order to hear that issue, the ASBCA would have to reopen litigation and hear the case for the first time, which is exactly what this Court would do. As either tribunal would in effect entertain ARC's claim for the first time, we respectfully request this Court to allow ARC its option of challenging the Government's assessment of reprocurement costs in this forum.

**5. Resolution of the Matters Before the Court of Federal Claims Would not Adversely Affect Resources**

As explained above, either tribunal would have to entertain ARC's challenge to the Government's reprocurement assessment "from the beginning." Thus, proceeding at this Court on the damages question will not adversely affect the resources of the ASBCA, this Court, or either party.

**6. Inconsistent Results Will Not Arise From Actions in Separate Proceedings**

Inconsistent results will not arise from allowing ARC to challenge the Government's reprocurement assessment in this Court. Indeed, the issue of reprocurement costs cannot logically even commence until the ASBCA rules on the default issue. The ASBCA is considering only one issue: whether the Government properly terminated ARC for default. The ASBCA did not consider the Government's reprocurement costs. If the ASBCA rules in ARC's favor, then this litigation will be mooted. There is zero risk of inconsistent rulings.

### C. Consolidation Would Deprive ARC of the Important Option to Select What it Deems the Appropriate Forum to Litigate its Claims

Transferring ARC's claims would deprive ARC of the important option of selecting this Court to hear its claims. The December 1, 2005 Final Decision gave ARC the option of appealing that decision to this Court. There are many reasons why a contractor might choose to litigate its claims in one forum over another forum, including settlement considerations. See generally Schnaengold, Brams & Lerner, "Choice of Forum for Contract Claims: Court vs. Board," Briefing Papers No. 92-12 (Nov. 1999). ARC has chosen to challenge the Government's assessment of reprocurement costs to the Court of Federal Claims for various reasons, and ARC has been given that option by the Contract Disputes Act and the December 1, 2005 Final Decision. Transferring ARC's challenge to the ASBCA would unnecessarily deprive ARC of that option and ultimately its "day in court" at the Court of Federal Claims.

### D. The Convenience of the Parties and Witnesses Does not Weigh in Favor of Consolidation

Finally, transferring ARC's claims to the ASBCA would not serve the convenience of the parties or witnesses in terms of geographical location. The ASBCA and Court of Federal Claims are located within 10 miles of each other. Thus, this factor does not weigh in favor of consolidation.

## V. REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully request to be heard in oral argument on their Opposition to the Government's Motion to Transfer.

## VI. CONCLUSION

As set forth above, transferring ARC's challenge of the Government's reprocurement costs to the ASBCA is not compelled by the interests of justice, nor convenience to the parties and witnesses. The issues before the ASBCA and ARC's Complaint to this Court are distinct. The ASBCA has not considered the issue before this Court, and cannot do so without reopening the litigation. Judicial economy would not be promoted, and a transfer would unnecessarily deprive ARC of its option to select the best forum to litigate its claims.

Respectfully submitted,

*/s Edward J. Parrott*
WATT, TIEDER, HOFFAR
& FITZGERALD, L.L.P.
8405 Greensboro Drive
Suite 100
McLean, VA 22102
(703) 749-1000

Attorney for Plaintiffs

February 8, 2007

CERTIFICATE OF FILING

I hereby certify that on this 8th day of February 2007, a copy of OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER CLAIMS OF AMERICAN RENOVATION AND CONSTRUCTION COMPANY TO THE ARMED SERVICES BOARD OF CONTRACT APPEALS was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s Edward J. Parrott