# In the United States Court of Federal Claims

No. 06-813 C
(Filed: June 5, 2007)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| AMERICAN RENOVATION AND CONSTRUCTION COMPANY, ST. PAUL MERCURY INSURANCE COMPANY, and ST. PAUL FIRE AND MARINE INSURANCE COMPANY,       Plaintiffs, v. THE UNITED STATES,       Defendant. | RCFC 12(b)(1); Sureties as Plaintiffs; Motion to Transfer; Armed Services Board of Contract Appeals; 41 U.S.C. § 609(d); Motion to Stay |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Edward J. Parrott, McLean, VA, for plaintiffs.

Timothy P. McIlmail, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

Before the court are Defendant's Motion to Dismiss the Claims of St. Paul Mercury Insurance Company and St. Paul Fire and Marine Insurance Company for Lack of Subject Matter Jurisdiction ("motion to dismiss"), Defendant's Motion to Transfer Claims of American Renovation and Construction Company to the Armed Services Board of Contract Appeals ("motion to transfer"), and Plaintiffs' Motion to Stay This Matter Pending the Outcome of American Renovation and Construction Company's Appeal at the Armed Services Board of Contract Appeals ("motion to stay") (collectively, "motions"). Because all three motions are interrelated, the court will address them in one decision. For the reasons set forth below, the court grants defendant's motion to dismiss and denies defendant's motion to transfer. Further, once ARC files an amended complaint, the court will grant plaintiffs' motion to stay.

## I. BACKGROUND

American Renovation and Construction Company ("ARC") is a construction contracting business domiciled in California.[1] Compl. ¶ 2.  On September 27, 1997, defendant awarded contract number F41622-97-C-0022 ("M-2 contract") to ARC for the construction of 122 units of new military housing on Malmstrom Air Force Base ("Malstrom AFB") in Montana.  Id. ¶ 8.  On March 27, 1998, defendant awarded contract number F41622-98-C-0011 ("M-3 contract") to ARC for the construction of 72 additional units of new military housing on Malstrom AFB.  Id. ¶ 9.  The M-2 contract price was $14,359,380, and the M-3 contract price was $11,627,000.  Id. ¶¶ 8-9.  St. Paul Mercury Insurance Company and St. Paul Fire and Marine Insurance Company (collectively, "sureties") provided the performance bonds for the contracts.  Id. ¶ 10.

ARC began construction under the M-2 contract in late May 1998, id. ¶ 11, and delivered the required housing units to defendant on July 30, 1999, August 30, 1999, September 30, 1999, and October 29, 1999.  Id. ¶ 15.  ARC began construction under the M-3 contract in July 1999, id. ¶ 13, and delivered the required housing units to defendant on September 28, 2000, October 10, 2000, October 12, 2000, November 7, 2000, and November 21, 2000.  Id. ¶ 16.  Defendant accepted all of the housing units and common areas on the dates they were delivered by ARC.  Id. ¶¶ 15-16.  To ARC's knowledge, all of the housing units have been occupied since defendant accepted delivery.  Id. ¶ 17.

On December 19, 2001, defendant issued a Final Decision that revoked its acceptance of the M-2 contract and terminated the contract for default.  Id. ¶ 18.  Similarly, on September 17, 2002, defendant issued another Final Decision that revoked its acceptance of the M-3 contract and terminated the contract for default.  Id. ¶ 19.  In both cases, defendant alleged that "ARC's backfill and compaction practices, and subsequent settlement and subsidence, were latent defects" that justified revoking its acceptances and terminating the contracts for default.  Id. ¶ 20.

ARC appealed both the December 19, 2001, and September 17, 2002 Final Decisions to the Armed Services Board of Contract Appeals ("ASBCA").  Id. ¶ 28.  ARC challenged the propriety of the default terminations on the following grounds: "the Government had substantial and repeated knowledge at the time of the Government's acceptance, of ARC's backfill and compaction practices and the settlement and subsidence conditions," id. ¶ 21; government inspectors and representatives "routinely observed and communicated what they considered to be improper backfill and compaction practices throughout ARC's performance," id. ¶ 22; "Government cost reductions required the use of locally existing soils for backfill" and "[t]he Government knew the conditions of the locally existing soils," id. ¶ 23; "[t]he Government . . . failed to contemporaneously review project documentation and reports that would have put the Government on further notice regarding ARC's allegedly defective backfill and compaction practices," id. ¶ 24; "[t]he Government was . . . aware of the settlement conditions," including the

---

[1]  The facts are taken from the allegations contained in the Complaint ("Compl.") and the attached exhibit ("Compl. Ex.").

ongoing problems of "sinking stoops or patios, garage slab settlement, garage foundation cracking, and settlement of sidewalks," id. ¶ 25; "the alleged defects were caused by defective specifications issued by the Government, as a result of Government mandated cost cutting measures," about which ARC warned the government, id. ¶ 26; and "the Government failed to perform necessary maintenance adjustments to support the screwjack columns supporting the first floor assembly," id. ¶ 27.  The parties litigated the appeals from November 30, 2004, to December 17, 2004.  Id. ¶ 29.  The ASBCA has not yet issued a ruling on ARC's appeals.  Id. ¶ 30.

On December 1, 2005, defendant issued a third Final Decision that assessed against ARC, and if ARC was unable to pay, "St. Paul Traveler's,"[2] damages in the amount of $25,773,662.17 for reprocurement costs and other costs associated with the default terminations.  Id. ¶ 6; Compl. Ex. A at ¶ 1 ("I hereby inform [ARC], and if it cannot pay, then its surety St. Paul Traveler's, [it] is indebted to the United States Government . . . ."); Compl. Ex. A at ¶ 9 ("Thus, the Government is also making its demand against [St. Paul Traveler's], the surety on the performance bonds in the event that ARC cannot provide payment in full.").  ARC and the sureties filed a Complaint in this court on November 30, 2006, contending that the December 1, 2005 Final Decision was premature, Compl. ¶¶ 31-34, the assessed damages are excessive, id. ¶¶ 35-43, and the sureties are not bound by the December 1, 2005 Final Decision, and should be discharged from liability, id. ¶¶ 44-54.  The Complaint includes two counts.  Because the precise language used in the Complaint is critical to the court's ruling on defendant's motion to transfer, the court finds it useful to quote the pertinent paragraphs in their entirety.  Count I, "Breach of Contract," includes the following relevant paragraphs:

> 56.  The Government's improper default terminations, and its premature Final Decision and the excessive damages sought therein, constitute material breaches of the Contracts.
> 57.  The Government abused its discretion in default terminating the Contracts.
> 58.  The Government owed an equitable duty to St. Paul Travelers, and in materially breaching the Contracts and in abusing its discretion, the Government violated that duty.
> 59.  As a direct and proximate result of the Government's improper termination, ARC and St. Paul Travelers have incurred and will continue to incur damages, including but not limited to reasonable attorneys' fees and consulting fees.

---

[2]  The December 1, 2005 Final Decision identifies ARC's surety as "St. Paul Traveler's." The Complaint, referring to this same entity as "St. Paul Travelers," contends that St. Paul Traveler's is not the surety for the M-2 and M-3 contracts.  Compl. at 2 n.1.  But, because defendant identified "St. Paul Traveler's" as ARC's sureties on the two contracts and demanded payment from "St. Paul Traveler's" if ARC was unable to pay, both of the actual sureties to the contract joined ARC as co-plaintiffs in this action.  Id.

60. The Government materially breached the Contracts and violated the Contract Disputes Act by issuing its premature Final Decision, and seeking excessive damages, which are substantially beyond what the Government actually expended.

61. As a direct and proximate result of the Government's premature Final Decision, and seeking of excessive damages, which are substantially beyond what the government actually expended, ARC and St. Paul Travelers have incurred and will continue to incur damages, including but not limited to reasonable attorneys' fees and consulting fees.

Count II, "Declaratory Judgment," includes the following relevant paragraphs:

63. The controversy is ripe and justiciable as to ARC, as the Government directly assessed the disputed damages against ARC.

64. The controversy is ripe and justiciable as to St. Paul Travelers, to the extent it is found that the Government assessed the disputed damages against St. Paul Travelers.

65. A declaration of the parties' rights with respect to the Government's premature Final Decision, and the Government's assessment of excessive damages will resolve the controversy.

66. ARC has suffered actual harm and will continue to suffer harm if there is not a declaration of the parties' respective rights. ARC has incurred expenditures, has been assessed damages, and will continue to be assessed damages prior to a finding of liability.

67. St. Paul Travelers has suffered actual harm and will continue to suffer harm if there is not a declaration of the parties' respective rights. St. Paul Travelers has incurred expenditures, has purportedly been assessed damages, and will continue to be assessed damages prior to a finding of ARC's liability and any liability on the Bond.

68. Pursuant to 28 U.S.C. § 1491(a); 28 U.S.C. § 1507; and Rule 57 of the RUSCC, Plaintiffs pray for declaratory relief as follows:

(a) That the Final Decision is premature and must be withdrawn until a final ASBCA ruling on the propriety of the default terminations for the M-2 and M-3 Contracts.

(b) That the damages contained in the Final Decision are excessive and any amounts expended for work not contained in the Contracts be stricken.

(c) That the damages contained in the Final Decision are excessive and any amounts must be limited to amounts the Government actually spent.

(d) That the damages contained in the Final Decision are excessive because the housing units are fit, and are being utilized, for their intended purpose.

(e) That St. Paul Travelers is not bound by the Final Decision.

(f) That St. Paul Travelers has been released and discharged on the M-2 Contract and M-3 Contract Bonds by reason of the failure of the Government to

mitigate its damages and by the Government's failure to comply with its duties and requirements under the Contracts.

    (g)  That St. Paul Travelers has been released and discharged on the M-2 Contract and M-3 Contract Bonds by reason of the failure of the Government to provide inspections or quality control measures.

    (h)  That St. Paul Travelers has been released and discharged on the M-2 Contract and M-3 Contract Bonds by reason of the Government's overpayment for work allegedly not in conformity with the contractual requirements.

In lieu of an answer, defendant filed a motion to dismiss and a motion to transfer.  Subsequently, plaintiffs filed a motion to stay.  The court heard argument on all three motions on June 1, 2007.

## II.  DISCUSSION

### A.  Motion to Dismiss

**1.  Standard**

    Defendant's motion to dismiss seeks the dismissal of the claims brought by the sureties for lack of subject matter jurisdiction.  In ruling on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), the court assumes that the allegations in the complaint are true and construes those allegations in plaintiff's favor.  Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995).  A plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction.  McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  The court may look to evidence outside of the pleadings to determine the existence of subject matter jurisdiction.  Land v. Dollar, 330 U.S. 731, 735 & n.4 (1974); Reynolds, 846 F.2d at 747.  If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

**2.  Subject Matter Jurisdiction**

    Whether the court has jurisdiction to decide the merits of a case is a threshold matter.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868).  The parties or the court sua sponte may challenge the court's subject matter jurisdiction at any time.  Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004).

    The ability of this court to hear and decide suits against the United States is limited.  "The United States, as sovereign, is immune from suit save as it consents to be sued."  United States v.

Sherwood, 312 U.S. 584, 586 (1941).  The waiver of immunity "cannot be implied but must be unequivocally expressed."  United States v. King, 395 U.S. 1, 4 (1969).  The Tucker Act, the principal statute governing the jurisdiction of the United States Court of Federal Claims ("Court of Federal Claims"), waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States.  28 U.S.C. § 1491(a)(1) (2000).  In this case, the statute providing the court with jurisdiction is the Contract Disputes Act of 1978 ("CDA"), Pub. L. No. 95-563, 92 Stat. 2383 (codified as amended at 41 U.S.C. §§ 601-613 (2000)).  The CDA provides that contractors, within twelve months of receiving a final decision from a contracting officer, may appeal the final decision to the Court of Federal Claims.  41 U.S.C. § 609(a).

### 3.  Sureties That Have Not Performed Their Obligations Under Their Performance Bonds Cannot Maintain a Cause of Action in the Court of Federal Claims

The CDA limits the judicial review of contracting officer final decisions to the claims of contractors.  Id.  However, in this case, two of the three plaintiffs are sureties.  A surety is one "who is primarily liable for the payment of another's debt or the performance of another's obligation."  Black's Law Dictionary 1482 (8th ed. 2004).  In the case of a government contract, a "surety guarantees that a contract will be completed in the event of the principal's default and that the government will not have to pay more than the contract price."  Ins. Co. of the West v. United States, 243 F.3d 1367, 1370 (Fed. Cir. 2001).  The performance bond issued by the surety "creates a three-party relationship, in which the surety becomes liable for the principal's debt or duty to the third party obligee (here, the government)."  Id.; see also First Hartford Corp. Pension Plan & Trust v. United States, 42 Fed. Cl. 599, 611 (1998).  The performance bond neither is a contract nor creates privity of contract between the surety and the government.  Ins. Co. of the W., 243 F.3d at 1370.

The parties agree that the CDA does not apply to sureties.  Transcript of June 1, 2007 Proceedings ("Tr.") 4, 12-13.  In fact, at oral argument, defense counsel clearly stated defendant's position:

> [T]he court has, in writing, our position on whether this Court has jurisdiction
> over the sureties' claims as they stand now; and my statement at the podium that
> 609(a)(3) does not apply to sureties. . . . [I]f the question is: Did the time for the
> sureties to challenge that decision expire a year after this contracting officer's
> decision, the answer from the Department of Justice is: No, it did not expire.

Id. 14-15.  Further, plaintiffs in this case do not allege any other contract, express or implied, between the sureties and defendant.  Lacking the required privity of contract, Cienega Gardens v. United States, 194 F.3d 1231, 1239 (Fed. Cir. 1998), plaintiffs instead invoke the doctrine of equitable subrogation in opposing defendant's motion to dismiss.  Plaintiffs' Opposition to Motion to Dismiss the Claims of St. Paul Mercury Insurance Company and St. Paul Fire and

Marine Insurance Company for Lack of Subject Matter Jurisdiction ("Pls.' Opp'n Mot. Dismiss") 3-8.

To assert a subrogation claim, a surety must either take over performance of the contract or "finance[] the completion of the defaulted contract." Ins. Co. of the West, 243 F.3d at 1370; see also Pearlman v. Reliance Ins. Co., 371 U.S. 132, 137 (1962) ("[A] surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed."); Balboa Ins. Co. v. United States, 775 F.2d 1158, 1161 (Fed. Cir. 1985) ("When the surety then finances the contract to completion, it is subrogated to the contract's property rights in the contract balance."); Fid. & Deposit Co. of Md. v. United States, 31 Fed. Cl. 540, 542-43 (1994) ("Not having financed the contract to completion, plaintiff cannot claim the status of a subrogee."). In other words, if a surety has not undertaken any action with respect to a defaulted contract, any claim the surety might have remains purely hypothetical. Because there is no evidence that ARC's sureties have taken over the performance of the M-2 and M-3 contracts or financed the completion of the M-2 and M-3 contracts, plaintiffs' invocation of equitable subrogation is unavailing.

Additionally, plaintiffs' argument that the December 1, 2005 Final Decision itself vests this court with jurisdiction over the sureties' claims, Pls.' Opp'n Mot. Dismiss 4-5, lacks merit. Plaintiffs aver that because the December 1, 2005 Final Decision was addressed to both ARC and its sureties and limited the period of time in which ARC and its sureties could appeal the ruling to the ASBCA or this court, the sureties have standing to bring the instant action. Id. at 4; see also Compl. Ex. A at ¶¶ 1, 9. Plaintiffs are mistaken. The law is clear that the sureties are required to finance the completion of the M-2 and M-3 contracts prior to bringing suit in this court. Thus, any language in the December 1, 2005 Final Decision that might be construed to the contrary is "incorrect as a matter of law, and therefore of no legal significance." Fid. & Deposit Co. of Md., 31 Fed. Cl. at 543 (citing Skelly & Loy v. United States, 685 F.2d 414, 419 (Ct. Cl. 1982)). Such legal error, however, does not invalidate the remainder of the December 1, 2005 Final Decision. See id. at 543 n.2 (noting the limited effect of the contracting officer's incorrect statement of the law). Indeed, contrary to plaintiffs' view, the substance of the December 1, 2005 Final Decision is directed primarily at ARC, while merely reminding the sureties of their performance bond obligations. In the end, it is the performance bonds that obligate the sureties, not the December 1, 2005 Final Decision. Since the sureties have not acted pursuant to the performance bonds, the court grants defendant's motion to dismiss the claims of the two surety plaintiffs.

## B.  Motion to Transfer and Motion to Stay

Defendant next seeks the transfer of the remaining claims in this case to the ASBCA, the tribunal to which ARC appealed the default terminations of the M-2 and M-3 contracts. This court has the broad discretion in deciding whether to transfer a case to an agency board. Joseph Morton Co. v. United States, 757 F.2d 1273, 1280 (Fed. Cir. 1985). In making its decision, the court is guided by the following language from the CDA:

> If two or more suits arising from one contract are filed in the United States Court
> of Federal Claims and one or more agency boards, for the convenience of parties
> or witnesses or in the interest of justice, the United States Court of Federal Claims
> may order the consolidation of such suits in that court or transfer any suits to or
> among the agency boards involved.

41 U.S.C. § 609(d).  When deciding whether to transfer a case to an agency board, the court may
consider various factors, including:

> whether the issues arise from the same contract, whether the issues overlap or are
> duplicative, where the plaintiff initially filed or appealed its claims, whether either
> forum has made significant progress in rendering judgment on any claim, how
> resolution of the matters in separate fora would affect the parties', board's or
> court's resources, and whether inconsistent results are likely to arise from actions
> in separate proceedings.

Rockwell Automation, Inc. v. United States, 70 Fed. Cl. 114, 126 (2006) (citations omitted).

**1.  Plaintiffs' Cases Before the ASBCA and the Court of Federal Claims Are Based Upon
the Same Contracts and Contain Some Overlapping Allegations That This Court Will Not
Consider**

There is no dispute that the appeals before the ASBCA and the case before this court
concern the same contracts.  Defendant's Motion to Transfer Claims of American Renovation
and Construction Company to the Armed Serves Board of Contract Appeals ("Def.'s Mot.
Transfer") 3; Plaintiffs' Opposition to Motion to Transfer Claims of American Renovation and
Construction Company to the Armed Serves Board of Contract Appeals ("Pls.' Opp'n Mot.
Transfer") 8.  Rather, the dispute concerns the nature and extent of the overlap between the cases
before the two tribunals.  Defendant contends that in both the case sub judice and the ASBCA
appeals, ARC is contesting the propriety of the default terminations.  Def.'s Mot. Transfer 2-3;
Defendant's Reply to Plaintiffs' Opposition to Motion to Transfer Claims of American
Renovation and Construction Company to the Armed Serves Board of Contract Appeals ("Def.'s
Reply Mot. Transfer") 1-2.  Defendant also argues that ARC's allegations concerning the amount
of reprocurement costs are "substantially related to the issues before the ASBCA."  Def.'s Mot.
Transfer 3.  On the other hand, ARC contends that its "claims here are wholly separate and
distinct from its claims before the ASBCA," asserting that the ASBCA appeals concern "issues
of contract performance before termination" and the Complaint in this court concerns "issues of
reprocurement after termination . . . ."  Pls.' Opp'n Mot. Transfer 6; see also id. at 8-9; Plaintiffs'
Reply to Defendant's Opposition to Stay This Matter Pending the Outcome of American
Renovation and Construction Company's Appeal at the Armed Services Board of Contract
Appeals ("Pls.' Reply Mot. Stay") 2 ("Plaintiffs in this case are not seeking damages arising from
the Government's termination of the M-2 and M-3 contracts for default.  . . .  Plaintiffs in this
matter seek only to challenge the Government's December 1, 2005 excess reprocurement cost

assessment."); Tr. 27-28 ("I do want to be clear about something, very clear. We will not retry the default termination case here. We can't. We don't want to.").

According to the allegations in the Complaint, ARC is challenging the propriety of the default terminations before the ASBCA on the following general grounds: (1) defendant was aware of ARC's backfill and compaction practices; (2) defendant was aware of the settlement and subsidence conditions; and (3) defendant's specifications caused the alleged defects and resulting damages. Compl. ¶¶ 21-27. In this court, plaintiffs pled two causes of action: breach of contract and declaratory judgment. Within the breach of contract count, plaintiffs allege three breaches: "improper default terminations," the prematurity of the December 1, 2005 Final Decision, and an excessive request for reprocurement costs. See id. ¶¶ 55-61. Within the declaratory judgment count, plaintiffs seek "[a] declaration of the parties' rights with respect to the Government's premature Final Decision, and the Government's assessment of excessive damages," including, but not limited to, declarations that "the housing units are fit, and are being utilized, for their intended purpose," defendant failed to mitigate its damages or comply with its duties under the contracts, defendant failed to "provide inspections or quality control measures," and defendant overpaid "for work allegedly not in conformity with the contractual requirements." Id. ¶¶ 62-68.

Undeniably, the causes of action pled in the Complaint overlap ARC's contentions before the ASBCA. First, despite plaintiffs' protests to the contrary, their breach of contract count explicitly contests defendant's default terminations of the M-2 and M-3 contracts, the precise issue in the ASBCA appeals. Additionally, plaintiffs' declaratory judgment count seeks fact-finding, relating to defendant's actions prior to its acceptance of the two contracts, that coincides with the fact-finding necessary for the ASBCA's decision.

On the other hand, the Complaint also raises issues not pending before the ASBCA: the prematurity of the December 1, 2005 Final Decision and the amount of reprocurement costs. However, defendant argues that if this court denies its motion to transfer and it prevails before the ASBCA, this court would need to relitigate certain facts, including "the nature of the work, the performance of that work, and the associated costs, to demonstrate that the assessment of the reprocurement costs is 'excessive.'" Def.'s Reply Mot. Transfer 3. Plaintiffs dispute this contention, stating that "[t]he sole issue before this Court will be what it should cost the Government to repair any defects identified by the ASBCA decision. . . . [T]he majority of facts to be addressed in the excess reprocurement costs case have yet to occur, and necessarily were not addressed at the ASBCA."[3] Pls.' Opp'n Mot. Transfer 9; see also Tr. 26 ("$22.7 million of the [reprocurement costs] . . . is an estimate. These costs have not been incurred."). The court is not convinced that the parties would need to relitigate the issues identified by defendant. If the ASBCA finds the default terminations justified, it will certainly make findings of fact as to the

_____

[3] At oral argument, plaintiff's counsel recited, in detail, his view of the differences between the two cases. Tr. 25-28.

defects caused by ARC.  The determination of quantum for the government's cost to repair defects is a separate issue with different elements of proof.

In conclusion, the court declines to consider those aspects of plaintiffs' claims directly bearing on the propriety of the default terminations because they are currently being considered by the ASBCA.[4]  The court will thus apply the remaining factors described in <u>Rockwell Automation, Inc.</u> only to plaintiffs' claims concerning the reprocurement costs assessed by defendant.

## 2.  ARC's Decision to Pursue its Claims in Separate Fora and the Negative Consequences of Transferring ARC's Claims to the ASBCA Weigh Against Transfer

<u>Rockwell Automation, Inc.</u> describes several interrelated factors concerning a plaintiff's choice of forum.  In this case, ARC decided to challenge the propriety of the default terminations through an appeal to the ASBCA.  Subsequently, plaintiffs initiated a challenge in this court to defendant's assessment of reprocurement costs.  The court first looks at the direct effect that these choices of fora have on the decision to consolidate or transfer pursuant to 41 U.S.C. § 609(d).  As plaintiffs argue, their choice of separate fora for their two challenges weighs against consolidation or transfer.  <u>See</u> Pls.' Opp'n Mot. Transfer 9-11; <u>see also</u> <u>Rockwell Automation, Inc.</u>, 70 Fed. Cl. at 127 (noting the importance of plaintiff's preference for a particular forum).  However, as defendant contends, if the court finds that all of plaintiffs' claims should be heard by one tribunal, ARC's decision to challenge the default terminations before the ASBCA weighs in favor of transfer.  <u>See</u> Def.'s Mot. Transfer 3; <u>see also</u> <u>Precision Pine & Timber, Inc. v. United States</u>, 45 Fed. Cl. 134, 137 (1999) ("[T]he Plaintiff's first choice of forum is relevant to deciding which forum will hear the case, <u>assuming</u> that consolidation is appropriate.").

Second, the fora chosen by plaintiffs are also important as the court must consider the extent to which the fora have proceeded in their respective cases.  If one forum has conducted extensive proceedings, placing all of plaintiffs' claims in that one forum might lengthen unduly its proceedings.  <u>See, e.g.</u>, <u>Precision Pine & Timber, Inc.</u>, 45 Fed. Cl. at 137 (noting that where litigation before a board could conclude in the near future, "[i]t would be unfair to the contractor to deny it quick resolution on its appeal by entangling it with this lawsuit.").  On the other hand, it may be sensible to consolidate cases where one forum has conducted extensive proceedings and the claims before each forum are similar.  <u>See, e.g.</u>, <u>Marshall Associated Contractors, Inc. v.</u>

---

[4]  Formal transfer of these claims to the ASBCA is unnecessary because these issues are before the ASBCA for determination.  Plaintiffs have proposed to amend the Complaint to remove allegations concerning the default terminations.  <u>See</u> Pls.' Reply Mot. Stay ("Plaintiffs hereby offer to amend their complaint to the extent that the complaint is interpreted as seeking those damages."); Tr. 28 ("[T]here is some surplusage in the complaint.  If that is of concern to the Court, or to the government, I want to amend that complaint.").  Plaintiffs shall amend the Complaint, as directed below.

United States, 31 Fed. Cl. 809, 816 (1994) (finding that the board "has made the most progress on the claim because it previously considered many of the issues, and, for reasons of judicial and administrative efficiency, would be able to more readily rule on the issues."). The court finds the analysis of Precision Pine & Timber, Inc. to be more apt to the facts in this case. The ASBCA has made extensive progress in ARC's appeals. Thus, as plaintiffs argue, ARC's ability to obtain an efficient resolution of its challenges to the default terminations could be hampered by transferring plaintiffs' damages claims to the ASBCA, see Pls.' Opp'n Mot. Transfer 10, especially if the ASBCA decides to consolidate all of plaintiffs' claims into ARC's original appeals.

Third, the court evaluates the effect that consolidation or transfer might have on the resources of the involved fora. The court finds that any effect would be de minimis. Plaintiffs' allegations concerning defendant's assessment of reprocurement costs are separate and distinct from ARC's challenges to the default terminations. Thus, as asserted by plaintiffs, any tribunal hearing the reprocurement cost claims would lack any significant head start. See Pls.' Opp'n Mot. Transfer 10.

Finally, the court must look to whether a denial of defendant's motion to transfer could result in the fora arriving at conflicting results. There is no question that the possibility exists for conflicting results in the event of concurrent litigation in both tribunals. Accordingly, this factor weighs in favor of consolidation or transfer. Of course, it bears noting that staying the proceedings in this court would cure the problem of conflicting results.

Overall, the court finds that the various factors related to plaintiffs' choice of fora weigh in favor of this court retaining plaintiffs' claims concerning defendant's assessment of reprocurement costs. The court sees no real advantage in transferring the reprocurement cost claims to the ASBCA as the ASBCA would be in the same position as this court with respect to these claims. Both tribunals would need to wait for a ruling on the propriety of the default terminations before proceeding and if further proceedings were necessary, both tribunals would need to engage in additional fact-finding and analysis concerning plaintiffs' reprocurement cost claims.

## 3. The Effect of Separate Proceedings on the Parties' Resources Is Negligible

The final factor that the court takes into consideration is how proceeding in separate fora would affect the parties' resources. Concurrent proceedings before each tribunal undoubtedly would tax the parties' resources as the parties would, in essence, be arguing about liability (i.e., the propriety of the default terminations) in one forum at the same time they were arguing damages (i.e., the assessment of reprocurement costs) in the other forum. Thus, because liability is the threshold issue that must be addressed before damages can effectively be challenged, concurrent proceedings are not possible in this case. Since the parties would not be engaged in simultaneous litigation before the ASBCA and this court, the effect of separate proceedings on the parties' resources neither weighs in favor or against transfer. Staying the instant case pending

the resolution of the appeals before the ASBCA thus remedies any difficulties or waste of resources presented by separate, concurrent proceedings.

**4. The Interest of Justice Requires the Court to Deny Defendant's Motion to Transfer**

After weighing all of the relevant factors, the court determines that the convenience of the parties and the interest of justice do not support the transfer of plaintiffs' reprocurement costs claims to the ASBCA. This conclusion is further strengthened by plaintiffs' motion to stay, which suggests a mechanism that promotes the most efficient administration of justice. But see Def.'s Reply Mot. Transfer 4 (characterizing a stay as inconvenient to the parties and the court). Accordingly, the court denies defendant's motion to transfer and will grant plaintiffs' motion to stay.

### III.  CONCLUSION

Defendant's motion to dismiss plaintiffs St. Paul Mercury Insurance Company and St. Paul Fire and Marine Insurance Company is **GRANTED**. Defendant's motion to transfer is **DENIED**. By **no later than Monday, July 2, 2007**, pursuant to RCFC 15(a), ARC shall amend the complaint to conform with the court's ruling as set forth above. Specifically, ARC shall change the style of the case to reflect the dismissal of the two sureties, remove any allegations on behalf of the sureties, and delete those allegations concerning the default terminations that overlap with those currently pending before the ASBCA. Upon receipt of ARC's amended complaint, the court will grant plaintiffs' motion to stay. Defendant will not be required to file an answer, or otherwise respond to the amended complaint, until the court lifts the stay.

The parties shall file a joint status report **within two weeks** of the ASBCA's decision describing how they wish to proceed in this case. If the ASBCA has not reached a decision by **Friday, September 7, 2007**, the parties, by that date, shall file a joint status report indicating that fact.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge